## L. Burk *v.* The State.

1. RAPE — CHARGE OF THE COURT. — "Penetration of the person of the female by that of the male" (the phraseology of a charge on rape) might, as an exposition of the penetration necessary to consummate the offence, be deemed too indefinite of itself; but when, as in the present case, it was closely coupled with the further requirement of "carnal knowledge," so universally understood, its signification was sufficiently certain to obviate any possible misconception.

2. WITNESS. — The Code of Criminal Procedure, art. 732, makes the court below the trier of a child's competency to testify, and its ruling thereon will not be revised on appeal unless apparent that its discretion was abused.

APPEAL from the District Court of McLennan. Tried below before the Hon. L. C. ALEXANDER.

This appeal is from a capital conviction for rape upon Sarah McBee, a child of less than ten years of age. Fortunately for the credit of human nature, atrocities like that detailed in this record are as rare as they are revolting. No circumstance in the case tends to mitigate the infamy of the crime, or to suggest a possibility of the innocence of the appellant. The act was perpetrated in the night of August 29, 1879, at Robinsonville, a small village a few miles from Waco. Mrs. Mary McBee, the mother of the outraged

little girl, was a widow, and the defendant was an inmate of her house. What tie bound these two together is not disclosed by the record.

Sarah McBee was the first witness for the State. At the instance of the defence she was put upon her *voir dire*, to test her capacity to testify, and under a strict examination by the court she evinced a high order of natural intelligence, though an almost entire lack of education.

She stated her age as a little over nine years. Her account of the crime was connected and clear. Identifying the defendant, she stated that her first acquaintance with him was in East Waco, when he came to her mother's, who was then living in a house with a Mrs. Francis. After living in East Waco about six months, Mrs. McBee and her children moved to West Waco, Burk coming with them. They lived in West Waco about two months, and then went with Burk to Robinsonville.

About five or six months before the trial, which was had in January, 1880, the witness was sleeping one night on a pallet by her mother's bed, when Burk, who occupied an adjoining room, came and awoke her, and told her to get up and go in his room. "I didn't want to go with him," said the witness, "but he took hold of me and made me go. I tried to call ma, but Burk put his hand on my mouth and prevented me, and told me if I hallooed he would kill me. He then pulled me into his room, and put me up on his bed;" and the witness proceeded to give a decorous account of the consummation of the atrocity. Her mother at length interposed, and took the witness into her room, where she was at once taken very sick. Burk told her she must not tell that he hurt her, because if she did they would kill him; but that she must tell that, while she was in the field pulling grass for the calves, somebody jumped out of a fence corner and hurt her.

Dr. Tate, for the State, testified that he was called in to see Sarah McBee on the morning of August 30, 1879.

The defendant came for him early in the morning, and told· him that Sarah McBee had been raped the preceding evening by some unknown person. Witness asked him why he had not informed the neighbors, so that they might find the ·guilty party. Defendant replied that Mrs. McBee thought there might be some disgrace about it, and desired to keep it secret. Witness then asked him for the particulars, and he said that the little girl was down in the field gathering grass for the calves, and had been raped there by a man whom she did not know. Witness made an examination of the child, and found such laceration and injuries as made it certain that actual penetration had been effected, and probable that severe internal rupture had been inflicted. He gave a detailed description of the injuries.

Witness was at Mrs. McBee's afterwards, when the defendant was arrested by deputy-sheriff Van Hall and others. When witness reached there the defendant was out in the yard talking to some of the arresting parties, and during their conversation Mrs. McBee came out, talking very loud. Defendant called out to her and said, "You stick up to me and I will stick up to you," or words to that effect. This was before he was arrested.

Dr. Sneed, for the State, testified that he was called in by Dr. Tate to see Sarah McBee, two or three days after the alleged date of the outrage. His account of her injuries concurred fully with Dr. Tate's, and both physicians thought her age to be about nine, as stated by herself, and ·onsidered her small for that age.

Van Hall, for the State, testified that he and others went to Mrs. McBee's the night of August 30, 1879. Witness rode up to the front gate and called Burk, who came out in his night-clothes, and witness told him it was understood that a little child had been raped there, and that he and his companions had come to find some clew to the guilty party. The defendant said that he had made diligent search, but could find no traces, and that it was of no use for witness

to make any inquiries at all. Witness asked him to tell all about the matter. Defendant stated that he had gone after water in the evening, and on his return Mrs. McBee told him that while the child was down in the field gathering grass some one had raped her, and that the child did not know who it was; that he (defendant) at once went down into the field and made diligent search, but could find no traces of anybody; that he returned home, ate his supper, and went to bed, and that the little child got worse about ten or twelve o'clock, and he was awakened by Mrs. McBee, and he told her to rub some liniment on the child, and then went down into the field again, thinking probably he could find some campers or some one, but finding no one, he returned and went back to bed; that, as the little girl still got worse, he went for Dr. Tate the next morning. While the defendant was making this statement to the witness, Mrs. McBee came to the door and commenced talking very loudly to them; and Burk turned around to her and said, "That's right, Mrs. McBee; you stand up to me and tell just what we agreed, and they can't hurt either one of us." Witness asked the defendant to stay out in the yard while he went in and talked to Mrs. McBee, and then, after talking with her in the house, asked her to step out into the yard, while Dr. Tate and witness should talk with the little girl. After they talked with the little girl, and she had told them all about the matter, witness went out to where one of his party was talking with the defendant. Witness told the defendant he believed he was the guilty party, and to consider himself under arrest. Witness also arrested Mrs. McBee, and brought her and the defendant to Waco.

Mrs. McBee, for the State, testified to the age of her little daughter, stating that she was born in September, 1870, which made the child a little less than nine years of age when the infamy was perpetrated. Mrs. McBee further stated that "the infamy was inflicted on Sarah at my house, — that is, Burk's house, — in McLennan County, State of

Texas." The witness was not examined further, being screened, doubtless, by the guaranty against compulsory crimination of herself.

No evidence at all was offered by the defence. He had asked a continuance to obtain the testimony of four witnesses by whom he expected to prove that they had lived in the same community with him for six or seven years, and knew his general reputation to be good for morality, peace, general good-citizenship, and a law-abiding disposition. The application did not conform to the statutory requirements, and was overruled.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, P. J. This prosecution was under an indictment charging appellant and one Mary McBee jointly with rape committed upon the person of Sarah McBee, a female under the age of ten years. Mary McBee was the mother of the injured child; but on the trial the prosecution was, on motion of the State's counsel, dismissed as to her, and the appellant was alone placed upon trial, which resulted in his conviction and the assessment of his punishment at death.

In the motion for a new trial, three several errors are pointed out in the expression "penetration of the person of the female by that of the male," used in the several paragraphs in the charge. Able counsel who represented defendant in the court below have not briefed or argued the case, and we are left to conjecture, in a measure, the full force of the supposed error, the statement in the motion for new trial being limited by simply asserting the error to be in the language we have quoted. If correct in our conjecture, the objection is that the charge is not sufficiently full and explicit in stating positively to the jury that to constitute rape the private parts of the female must have

been penetrated by the male member, or sexual organ, of the man. We confess that this would have been better, would put the matter in plain and unmistakable terms, and that always in dealing with such subjects the restraints of over-sensitive modesty should not be permitted to leave in doubt the essential elements whose certainty is requisite in constituting the crime. That it is possible that the person of the male could penetrate the person of the female in other portions of her body than her private or sexual parts, with other portions or members of his person than his male or sexual organ, no one can question; and that such thing is possible without such penetration being rape, is equally certain.

But we do not think the objections well taken when the context or whole of either of the several paragraphs objected to is considered. The same mode of expression is common to each, and we will therefore take, by way of illustration, the sixth, which is in these words, viz. : "If you believe from the evidence before you, beyond a reasonable doubt, that the defendant, L. Burk, was, before the 29th day of August, A. D. 1879, a male person over the age of fourteen years, and that he, on or after said date and before the presentment of the indictment, did, in McLennan County in this State, obtain carnal knowledge of the person of Sarah McBee, and that said Sarah McBee was a female under the age of ten years at the time, and that he, the said L. Burk, did penetrate the person of the said Sarah McBee with his person, you will find him, the defendant, guilty of rape, whether such carnal knowledge (if any) was obtained with or without consent, or with or without the use of force, threats, or fraud." Our statute defines " rape " to be " the carnal knowledge of a woman without her consent, obtained by force, threats, or fraud ; or the carnal knowledge of a female under the age of ten years, with or without consent and with or without the use of force, threats, or fraud." Penal Code, art. 528.

It will be observed that the charge of the court uses the expression "carnal knowledge" used in the definition of the Code to characterize the offence. The words "carnal knowledge" have a meaning as well understood in common acceptation as any other ordinary expression, and are convertible or interchangeable with the words "sexual intercourse" as used in our language. When, in connection with "carnal knowledge," "penetration of the person of the female by that of the male" is spoken of, there can be no mistake or misapprehension as to what is meant. In *McMath* v. *The State*, the Supreme Court of Georgia go to the length of saying: "When a man is charged with the offence of rape, which is defined by law to be the *carnal* knowledge of a female forcibly and against her will, the charge of 'carnal knowledge of a female' is sufficiently definite and distinct to enable the jury to understand the nature of the offence, without specifying the particular manner in which that carnal knowledge was had." 55 Ga. 303.

Whilst the charge might, with every propriety, both in morals and modesty as well as law, have been fuller and more specific, we cannot say that it is not sufficiently full and certain to meet all the demands of the law.

Two bills of exceptions were reserved by defendant on the trial, — one with regard to the competency of Sarah McBee to testify in the case, and one to the action of the court in overruling defendant's application for a continuance. When the competency of Sarah McBee was called into question on account of her tender years, the court, upon suggestion made, under provisions of art. 732 of the Code of Criminal Procedure, examined the child, and after an appropriate examination pronounced her competent and permitted her to testify. This examination, both questions and answers, is set out in the bill of exceptions, and we are of opinion that the child displayed sufficient intelligence to testify as to the transaction, and that the court has not abused the discretion conferred by law in permitting her to

testify in the case. *Brown* v. *The State*, 2 Texas Ct. App. 115 ; *Brown* v. *The State*, 6 Texas Ct. App. 286 ; *Ake* v. *The State*, 6 Texas Ct. App. 398.

The application for continuance was properly overruled, because of the inadmissibility of the desired evidence, and for want of diligence to obtain the testimony, and for want of compliance with the sixth subdivision of art. 560 of the Code of Criminal Procedure.

There can be no question of the sufficiency of the evidence to fix beyond doubt defendant's guilt of this most diabolical crime. The injured little girl was not ten years of age, and was small and light of frame, and delicate of health besides. The extremest penalty of the law cannot, under the circumstances of this case, be held too severe for infliction. If ever a case called for its infliction, the horrible details shown by this record make this eminently one of that character. No reason has been made to appear why the hand of the law should be stayed, and the judgment is therefore affirmed.

*Affirmed.*